CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 14 2018

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMES JESSUP, ) | CASE NO. 7:17CV00507 |
| Petitioner, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| HAROLD W. CLARKE, ) | By: Hon. Glen E. Conrad |
| DIRECTOR, ) | Senior United States District Judge |
| Respondent. ) | |

James Jessup, a Virginia inmate proceeding pro se, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement on a judgment in the Nelson County Circuit Court. Respondent filed a motion to dismiss, and Jessup responded, making the matter ripe for disposition. After review of the record, the court concludes that the petition must be dismissed.

### I. Background

On direct appeal, the Court of Appeals of Virginia established the following facts:

> [T]he victim was appellant's daughter and she moved from her mother's house in Pennsylvania to Virginia to live with appellant in June 2008 when she was fifteen years old. The victim and her mother had a falling out. The victim and appellant had spent time together four or five times prior to 2008, but she had not seen appellant since she was eleven or twelve years old. According to the victim, she did not know appellant. The victim testified in August 2008 appellant made comments about the size of her breasts, and approximately one month later, he asked her to show him her breasts, which she did. The victim testified about one month after she showed him her breasts, appellant had her play with sex toys while he masturbated. The victim testified in 2009 and 2010, appellant made her use a sex toy and she penetrated her vagina with it. The victim testified she felt threatened by appellant because he was "a big guy," he was "always hitting people," and he frequently made comments about hitting people. The victim testified they used the sex toys for approximately one year and then they performed oral sex on each other. The victim testified appellant performed oral sex on her numerous times. The victim testified she did not tell anyone because she was scared. The victim testified about two years after they started using sex toys, they had sexual intercourse. The victim testified appellant also penetrated her vagina with his finger. The victim testified during this time, she had a

boyfriend and appellant would make her boyfriend leave the residence until she had oral sex or sexual intercourse with appellant. After she had oral sex or sexual intercourse, appellant would permit her boyfriend to return. The victim testified for one year she lived in a shack near appellant's trailer because there was not enough room in appellant's trailer and appellant continued to sexually abuse her while she lived in the shack. The victim testified while she lived in the shack, appellant would occasionally take her to motels. The victim testified just prior to turning eighteen, appellant hit her boyfriend and she moved from appellant's property.

The victim testified at one point, she told appellant that she was going to tell her paternal grandmother and a paternal aunt what he was doing. The victim testified appellant threw her against a Jeep and told her not to tell. The victim testified appellant had sent her boyfriend away and he did not see the incident. The victim testified she returned to the shack, appellant said that her boyfriend could return, and appellant said everything would be fine. The victim testified she did not tell anyone because she was scared after appellant threw her against the Jeep. The victim testified appellant also told her that no one would believe her.

\* \* \*

The victim testified after she turned eighteen in 2012, she told Tiffany Harris, a therapist at her school about the sexual abuse, and Karen Zirkle, a teacher at the school, but nothing happened. The victim testified in June 2012, she called her mother and told her mother about the abuse, but did not go into details. The victim testified her mother told her sister and her sister repeatedly called appellant's cell phone. The victim testified she told her paternal grandmother and paternal aunt about the sexual abuse. The victim testified appellant told her that she needed to tell everyone he did not sexually abuse her so they would stop "bugging" him. The victim testified appellant made her call her mother and sister and tell them appellant did not sexually abuse her. The victim testified appellant forced her to go to her grandmother's house and to tell her grandmother and aunt appellant did not sexually abuse her. The victim testified in the fall of 2012, she went to Pennsylvania by herself to visit her mother and she told her mother appellant sexually abused her. The victim's mother called the authorities in Virginia.

Harris testified in March 2012, the victim came to her office, the victim was upset, and the victim said that appellant was sexually abusing her. Harris testified since the victim was eighteen years old, she was limited as to what she could do, but she contacted a victim witness advocate with the county.

Zirkle testified in April 2012, the victim asked to speak to a therapist. Zirkle testified the victim acted "ashamed" and would not look her in the eye. Zirkle sent the victim to see Harris. Zirkle testified after the victim returned to school after speaking with Harris, the victim told her appellant sexually abused her.

The victim's mother testified the victim told her during a phone conversation that appellant was sexually abusing her. The victim's mother testified she contacted the authorities in Virginia. The victim's mother testified

2

when the victim visited her in Pennsylvania in November 2012, [Investigator] Mayes drove to Pennsylvania to speak to the victim.

Jessup v. Commonwealth, No. 2160-13-3, slip op. at 3-4, 7-8 (Va. Cir. Ct. June 26, 2014), ECF No. 20-1.

At trial, the victim admitted that she had been diagnosed with Chlamydia in June of 2011 and that she had informed the doctor that she believed she contracted the infection from a new sexual partner. Trial Tr. 187, ECF No. 20-4. She also acknowledged that she had denied having any non-consensual sex in response to questions by staff during visits to the Blue Ridge Medical Center. Id. at 186. The victim testified that Jessup's sexual abuse regularly occurred every few days, and that the longest interval between abusive acts was a week, when Jessup traveled to Delaware.

Defense counsel repeatedly argued Jessup's innocence by referencing the victim's Chlamydia diagnosis. Id. at 295-96 (Jessup's wife, Erin Thompson, testifying that neither she nor Jessup had Chlamydia despite regular unprotected sex with Jessup.); id. at 130-31 (Counsel's opening statement pointed out that the victim had Chlamydia but Thompson never contracted it.); id. at 352-54, 364 (Counsel's closing statement mentioned that the victim had Chlamydia, but that neither Jessup nor Thompson did, and that it was "inconceivable that [Jessup] wouldn't have been—wouldn't have been infected with [Chlamydia]. It is—it would be inconceivable that it wouldn't have been passed on to [Thompson]."). Counsel also presented evidence from several witnesses that the victim spent most afternoons and evenings away from Jessup's home, id. at 243, 254-55, 264-66, 271, and that the victim had a poor reputation for truthfulness in the community, id. at 244, 247, 259-60, 275. Lastly, through argument and elicited testimony, counsel suggested the victim had ulterior motives for falsely accusing Jessup of abuse, including Jessup's violence toward her boyfriend and Jessup's and other family members' vocal concerns

3

that the victim's use of marijuana during pregnancy would result in her child being taken away. Id. at 258-59, 295,

The Commonwealth originally indicted Jessup on twenty felony offenses; however, the court nolle prossed eleven charges.[1] The jury deliberated on the nine remaining charges and convicted Jessup of aggravated sexual battery in 2009, aggravated sexual battery in 2010, aggravated sexual battery in 2011, forcible sodomy in 2010, and object sexual penetration in 2010. The jury acquitted Jessup of rape in 2011, forcible sodomy in 2011, object sexual penetration in 2011, and object sexual penetration in 2009. The court sentenced Jessup to 120 years' imprisonment. The defense filed a motion for a new trial, but the court reimposed its sentencing judgment after a motions hearing. Jessup's direct appeals were denied.

On March 14, 2017, Jessup filed a state habeas petition in the Supreme Court of Virginia, raising several allegations of ineffective assistance of counsel.[2] Jessup requested leave to expand the record in the case, which the court granted as to the documents attached to his petition, but denied without prejudice regarding future documents. Order, Jessup v. Clarke, No. 170461, slip op. at 1 (Va. May 9, 2017), ECF No. 20-2. The Supreme Court of Virginia denied his petition.

## II. Current Petition

On or around November 8, 2017, Jessup filed a § 2254 petition, alleging the following eight claims.[3]

1. Counsel failed to conduct necessary pretrial investigation and failed to subpoena Jessup's

---

[1] The court nolle prossed five charges before trial: aggravated sexual battery from 2008, aggravated sexual battery from 2012, rape from 2008, forcible sodomy from 2008, and object sexual penetration from 2008. The court later trial nolle prossed six charges after the trial: rape in 2012, forcible sodomy in 2012, object sexual penetration in 2012, rape in 2009, forcible sodomy in 2009, and rape in 2010.

[2] Jessup filed two state habeas petitions. The first petition requested permission to belatedly file a direct appeal to the Supreme Court of Virginia. The Supreme Court of Virginia granted his request on December 1, 2015.

[3] The court has reordered Jessup's claims for clarity. Jessup listed Claims 1-5 as Grounds 1-5 in his petition, and Claims 6-8 were listed as assignments of error I-III. See Pet'r's Pet. 3, 11, ECF No. 1.

4

medical records in support of the physical evidence that Jessup did not have a sexually transmitted disease;

2. Counsel denied Jessup an adequate opportunity to receive a hearing before the state circuit court in order to request and receive state funded assistance for an expert witness to support his defense;

3. Counsel failed to investigate the relevance of and introduce Erin Thompson's medical records;

4. Counsel refused to comply with the Rule of the Virginia Supreme Court requiring disclosure of intent to introduce evidence of an alibi;

5. Counsel did not make reasonable efforts to procure significant testimony from Michele Hostedler;

6. The Court of Appeals erred in affirming the trial court's erroneous refusal to dismiss the charges of forcible sodomy and forcible object penetration where there was no evidence that defendant did anything to threaten, force, or intimidate the alleged victim into having sex with him;

7. The Court of Appeals erred in affirming the trial court's erroneous refusal to hold an evidentiary hearing on the motion for new trial on the question of whether the victim perjured herself at trial, given her recantation; and

8. The Court of Appeals erred in affirming the trial court's erroneous refusal to grant a new trial based on the overall insufficiency of the evidence in light of the lack of corroboration, the substantial impeachment evidence, and the allegations raised in the motion for new trial.

This matter is now before the court on Respondent's motion to dismiss. Jessup's petition is timely.

### III. Standard of Review

To obtain federal habeas relief, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under 28 U.S.C. § 2254(d), however, a federal court may not grant a writ of habeas corpus based on any claim that a state court decided on the merits unless that adjudication:

> (1) [R]esulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;

or

> (2) [R]esulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists' could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

To state a constitutional claim for ineffective assistance of counsel, a petitioner must satisfy the two-pronged Strickland v. Washington test by showing (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." 466 U.S. 668, 686-687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential," and counsel is "permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success." Id. at 689; United States v. Mason, 774 F.3d 824,

6

828 (4th Cir. 2014).[4] When reviewing a Strickland claim under the AEDPA, the court's review is "doubly" deferential. See Richter, 562 U.S. at 105.

For Strickland's first prong, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687-88. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or common custom." Richter, 562 U.S. at 105 (quoting Strickland, 466 U.S. at 690). For the second prong, a petitioner must demonstrate that, but for counsel's alleged error, there is a "reasonable probability that the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine the confidence of the outcome." Id. Importantly, "[a]n attorney's failure to raise a meritless argument [] cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999); see also Moore v. United States, 934 F. Supp. 724, 731 (E.D. Va. 1996).

### IV. Expanding the Record

The plain language of the AEDPA limits a federal habeas court's review of a state court's decision to "the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d)(2). Specifically, § 2254(d)(1)'s "backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time i.e., the record before the state court." Cullen v. Pinholster, 563 U.S. 170, 182 (2011). Section 2254(d) also requires a claim to be adjudicated on the merits

---

[4] "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." Gentry, 540 U.S. at 8.

7

on a materially complete record. See Gordon v. Braxton, 780 F.3d 196, 202 (4th Cir. 2015). In order for a record to be considered "materially complete," "a state court [cannot] unreasonably refuse[] to permit further development of the facts of a claim." Id. (quoting Winston v. Pearson (Winston II), 683 F.3d 489, 496 (2012)). The Supreme Court of Virginia allowed Jessup to expand the record in his state habeas proceedings; therefore, the court properly adjudicated the merits of Jessup's claims on a materially complete record.[5]

In the current proceeding, Jessup includes photos of himself and the victim from 2014, a 2015 affidavit from the victim recanting her testimony, a 2014 letter to the governor of Virginia from the victim recanting her testimony, and a 2014 letter from the victim to an unknown person recanting her testimony. See ECF No. 13. However, despite Jessup initiating his state habeas petition in 2017 and receiving permission to expand the record, he did not present the documents to the Supreme Court of Virginia.[6] Accordingly, the court cannot review Jessup's expansion of the record in the present case because (1) he did not present the materials to the state courts, and (2) the state courts adjudicated his claims on the merits. See 28 U.S.C. § 2254(d); Gordon, 780 F.3d at 202.

V. Discussion

In Claims 1 and 3, Jessup asserts that trial counsel was ineffective for failing to procure and introduce Jessup and his wife's medical records. He argues that the records would have

---

[5] Jessup's proffer to the Supreme Court of Virginia included: affidavits from himself, Thompson, and Hostedler, medical records of himself, Thompson, and the victim, counsel's excusal letter for Hostedler's employer for her to be present and testify at Jessup's trial, financial statements allegedly demonstrating that Jessup visited Hostedler in Delaware, and family photos including the victim. Habeas R. 110-34, Jessup v. Clarke, No. 170461.

[6] Jessup's proffered documents also present severe credibility issues. On September 10, 2013, defense counsel moved for a new trial, citing a conversation and an unsigned affidavit in which the victim recanted. In response to the motion, investigators from Appomattox and Nelson County re-interviewed the victim. The victim, who was then incarcerated on petty larceny charges, told investigators that her testimony was truthful and that the Jessup's family offered her $2000 to recant. Commonwealth's Resp. to Def.'s Mot. for New Trial, Habeas R. 181-182; Jessup v. Clarke, No. 170461. She admitted to investigators that she lied to defense counsel in recanting her testimony because she needed the money and did not know about the consequences of perjury. Id.

8

demonstrated that neither had Chlamydia, the lack of medical records left his wife's testimony "uncorroborated," and, had the medical records been introduced at trial, the jury would have had a favorable view of him and acquitted him.

On habeas review, the Supreme Court of Virginia determined that the claims did not satisfy either prong of Strickland. First, the jury heard testimony that the victim had been diagnosed with Chlamydia in June 2011, but that neither Jessup nor Thompson contracted Chlamydia despite them having regular, unprotected intercourse during the relevant time period. Trial Tr. 187; 295-96. Second, defense counsel extensively argued throughout the proceedings that it was "inconceivable" that Jessup committed the crime because he and Thompson did not contract the disease. Jessup v. Clarke, No. 170461, slip op. at 2-3 (Va. Oct. 10, 2017), ECF No. 20-3. Third, the court admitted Thompson's testimony without objection or medical records.[7] Fourth, counsel could reasonably have thought that the medical records were unnecessary and relatively unhelpful because the negative tests were from 2010.[8] Meanwhile, the victim did not test positive for Chlamydia until 2011.

Lastly, Jessup's only conviction on a charge from 2011 was for aggravated sexual battery, a crime which does not require sexual acts that would necessarily result in the contraction of Chlamydia.[9] In fact, the jury acquitted Jessup of rape and forcible sodomy from

---

[7] The prosecutor did elicit testimony from Thompson that she did not bring the medical records to court but he did not object to the admission of her statements that neither she nor Jessup had Chlamydia. Trial Tr. 296.

[8] Jessup proffered both his and his wife's 2010 medical records to the Supreme Court of Virginia during his habeas proceedings.

[9] Aggravated sexual battery criminalizes sexual abuse under several circumstances, including abuse by a parent when the victim is at least thirteen but younger than eighteen. Va. Code § 18.2-67(3)(A)(3). Meanwhile,

"Sexual abuse" means an act committed with the intent to sexually molest, arouse, or gratify any person, where:
a. The accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts;
b. The accused forces the complaining witness to touch the accused's, the witness's own, or another person's intimate parts or material directly covering such intimate parts;

9

2011, both of which would have practically guaranteed that Jessup and Thompson would have contracted the Chlamydia in 2011.

Jessup fails to demonstrate that counsel was constitutionally ineffective because counsel's Chlamydia argument resulted in acquittals of rape and forcible sodomy in 2011, counsel strongly attacked the victim's credibility based on Jessup and Thompson's failure to contract Chlamydia, and the proffered medical records from 2010 would have been mostly irrelevant. Therefore, the state court's ruling was not contrary to, or an unreasonable interpretation of, federal law, or an unreasonable determination of the facts, and the court will grant the motion to dismiss Claims 1 and 3.

In Claim 2, Jessup argues that counsel's refusal to request expert assistance in gynecology at the state's expense constituted ineffective assistance because an expert was required to present his defense to the jury and the courts. Specifically, counsel did not allow Jessup the opportunity to demonstrate his indigency and counsel did not speak with Thompson, whose financial records would have proven that Jessup was indigent.

On habeas review, the Supreme Court of Virginia rejected Jessup's claim, holding that the claim failed to satisfy either Strickland prong:

> Petitioner proffers only Thompson's conclusory statement that they could no longer afford legal services and fails to proffer any evidence demonstrating counsel's evaluation of petitioner's financial status and the likely success of a request for financial assistance for an expert witness was incorrect. See [Va.] Code § 19.2-159 (defendant considered indigent if "a current recipient of a state or federally funded public assistance program for the indigent," or available funds, including net income and assets convertible into cash, are "equal or below 125 percent of the federal poverty income guidelines"). Furthermore, petitioner

---

c. If the complaining witness is under the age of 13, the accused causes or assists the complaining witness to touch the accused's, the witness's own, or another person's intimate parts or material directly covering such intimate parts; or
d. The accused forces another person to touch the complaining witness's intimate parts or material directly covering such intimate parts.

Va. Code § 18.2-67.10(6).

10

has failed to proffer the names of any experts and fails to proffer any evidence indicating an expert would have provided information or an opinion beneficial to petitioner. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Jessup v. Clarke, No. 170461, slip op. at 4. The court agrees with the Supreme Court of Virginia's ruling. First, Jessup fails to proffer any evidence demonstrating that he was actually indigent. Second, Jessup's failure to proffer an affidavit from a potential expert as to what testimony would have been given is fatal to his claim. See Bassette v. Thompson, 915 F.2d 932, 941 (4th Cir 1990) ("Appellant cannot establish ineffective assistance of counsel under Strickland v. Washington on the general claim that additional witnesses should have been called."); Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."). Therefore, the state court's adjudication was not contrary to, or an unreasonable interpretation of, federal law, or an unreasonable determination of the facts, and the court will grant the motion to dismiss as to Claim 2.

In Claims 4 and 5, Jessup asserts that counsel was ineffective for failing to establish his alibi. Specifically, counsel failed to comply with the disclosure requirements of Va. Sup. Ct. R. 3A:11[10] and failed to call Jessup's ex-wife, Michele Hostedler, as a defense witness. In his state habeas petition, Jessup included an affidavit from Hostedler stating that she could have testified that Jessup came up to visit her in Delaware for a few days once or twice a year. Jessup also submitted photographs showing that he visited Delaware occasionally.

The state court rejected Jessup's contentions:

> The record, including the transcript, demonstrates counsel intended to call Hostedler as a witness. During voir dire, counsel stated to the jury that he may

---

[10] In order to introduce evidence to establish an alibi, Va. Sup. Ct. R. 3A:11(c)(2) requires the defense to disclose the "the place at which he claims to have been at the time of the commission of the alleged offense."

11

call Hostedler as a witness but that she was not present at that time. On cross-examination, counsel reminded [the victim] that she had testified petitioner was having sex with her every two or three days and [the victim] indicated that was an average, that sometimes the sexual encounters would occur on successive days and other times there might be four or five days between sexual encounters. When counsel asked what was the longest period of time that had passed between sexual encounters, [the victim] replied "like a week and then it started back up again and that's only because [petitioner] went down to Delaware with my boyfriend.["] From this testimony, counsel could have concluded Hostedler's testimony would not have been beneficial to petitioner and would not have impeached [the victim's] testimony. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Jessup v. Clarke, No. 170461, slip op. at 4-5.

The court agrees with the state court's ruling. At the threshold, the prosecution was not required to demonstrate that the abuse occurred with a specific frequency or during the times Jessup was in Delaware. Accordingly, when the victim's testimony made clear to the jury that Jessup was not sexually abusing her every night but that the regularity of the sexual abuse varied, counsel could have rationally concluded that Hostedler's potential testimony merely corroborated the victim's testimony and did not establish a general alibi for Jessup. See, e.g., United States v. Dyess, 730 F.3d 354, 364 (4th Cir. 2013) ("[W]e give counsel wide latitude in determining which witnesses to call as part of their trial strategy."); Wilson v. Greene, 155 F.3d 396, 404 (4th Cir. 1998) ("Decisions about what types of evidence to introduce 'are ones of trial strategy, and attorneys have great latitude on where they can focus the jury's attention and what sort of mitigating evidence they can choose not to introduce.'") (quoting Pruett v. Thompson, 996 F.2d 1560, 1571 (4th Cir. 1993)). Further, although courts have held counsel's representation to be deficient if counsel fails to investigate and interview critical prospective witnesses, counsel mentioned Hostedler as a potential witness to the jury and presumably understood that she was not an alibi or exculpatory witness after the victim's testimony regarding

the timing of the sexual abuse. See Huffington v. Nuth, 140 F.3d 572, 580 (4th Cir. 1998) (collecting cases on "critical prospective witnesses," which included exculpatory, alibi, and self-defense witnesses). Therefore, the state court's adjudication was not contrary to, or an unreasonable interpretation of, federal law, or an unreasonable determination of the facts, and the court will grant the motion to dismiss as to Claims 4 and 5.

In Claims 6 and 8, Jessup alleges that the evidence was insufficient to convict him of rape and object penetration, and that the trial court erred by not dismissing the charges or granting him a new trial. Specifically, Jessup argues that the evidence did not establish that he forced or threatened the victim to engage in the sexual acts.

Federal habeas review of sufficiency of evidence claims are limited to determining "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The federal court considers circumstantial and direct evidence, and "allows the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). Moreover, "[w]here there are conflicts in testimony, it is for the jury and not the appellate court to weigh the evidence and judge the credibility of the witnesses." Id. at 1021-22 (citing United States v. Fisher, 484 F.2d 868, 860-70 (4th Cir. 1973); see also Marshall v. Lonberger, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). Lastly, on habeas review, a state court's determination of a factual issue is presumed to be correct unless a petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

On direct appeal, the Court of Appeals of Virginia[11] addressed the sufficiency of the evidence in Claim 6:

> According to the victim, appellant was a "big guy," he frequently hit people, and he frequently made comments about hitting people. The victim testified she was scared of appellant and although he pushed her against the Jeep in 2012, the jury could have reasonably concluded that the action was consistent with the victim's testimony of appellant's history of hitting people and she felt threatened and intimidated during the sexual abuse in 2010. Evidence of the victim's familial relationship with appellant and her knowledge of appellant's history of violent behavior would tend to prove that the victim was scared of him and, thus, would tend to prove that the forcible sodomy and object sexual penetration occurred through force, threat or intimidation. Based upon a review of the circumstances in this case, there was sufficient evidence supporting the jury's decision that appellant acted with force, threat, or intimidation.

Jessup v. Commonwealth, No. 2160-13-3, slip op. at 4 (Va. Ct. App. June 26, 2014), ECF No. 20-1. In Claim 8, the Court of Appeals of Virginia reaffirmed its holding on Claim 6 by rejecting Jessup's argument that the trial court should have granted him a new trial because the evidence was insufficient, the victim's testimony was not credible, and the victim had told defense counsel that she wished to recant her testimony:

> The trial judge heard and evaluated any inconsistencies in the evidence and determined that it was an issue for the jury to resolve. As noted above, in denying appellant's motion for a new trial, the trial judge found that the victim's testimony was credible, she was intensely cross-examined, and she did not sign the affidavit prepared by defense counsel. Although there was no corroborating evidence regarding the sexual abuse, the Commonwealth was not required to provide such evidence, but witnesses testified regarding the victim's recent complaint of the sexual abuse. Based upon a review of the circumstances in this case, the trial judge did not err in denying appellant's motion for a new trial due to insufficient evidence.

Id. at 8.

---

[11] The Supreme Court of Virginia summarily denied Claims 6 and 8 on direct appeal and Jessup did not raise the claims in his state habeas proceeding. Therefore, the federal habeas court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (reaffirming the essence of Ylst v. Nunnemaker, 501 U.S. 797 (1991)). In Jessup's case, the Court of Appeals of Virginia's decision is the last related state court decision providing a relevant rationale.

14

The court agrees with the Court of Appeals of Virginia. Jessup's aggressive nature and the victim's fear of her father were well-documented at trial, including testimony regarding specific instances of violence and threats that Jessup directed against the victim and her boyfriend. Further, the prosecution was never required to demonstrate direct evidence of actual force, an overt threat, or physical injury in order to prove the charges; circumstantial evidence of threats or intimidation sufficed. Rogers v. Missouri Pac. R.R. Co., 352 U.S. 500, 508 n.17 (1957) ("Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.") (citing The Robert Edwards, 19 U.S. 187, 190 (1821)). Jessup's conclusory statements to the contrary fail to reach the clear and convincing evidentiary standard necessary to rebut the presumption that the state court's factual determination was incorrect. Therefore, allowing the government the benefit of all reasonable inferences and appropriately deferring to the jury's findings, the court concludes that it was not unreasonable for the Court of Appeals of Virginia to uphold Jessup's conviction based on circumstantial evidence of force, threat, or intimidation. The court will grant the motion to dismiss as to Claims 6 and 8.

In Claim 7, Jessup contends that the trial court erroneously refused to hold a hearing regarding his motion for a new trial in light of the victim's apparent recantation. In Virginia, motions for new trials based on after-discovered evidence are "addressed to the sound discretion of the trial judge, are not looked upon with favor, are considered with special care and caution, and are awarded with great reluctance." Jessup v. Commonwealth, No. 2160-13-3, slip op. at 4 (quoting Hopkins v. Commonwealth, 456 S.E.2d 147, 150 (Va. 1990) (en banc)). "The courts properly require that it shall be made to appear affirmatively that the new evidence tending to show the mistake or the perjury, beyond question exists and is not a mere matter of belief or opinion, before they will grant the relief." Powell v. Commonwealth, 112 S.E. 657, 661 (1922).

15

At the threshold, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68. Federal habeas courts do not intervene in matters of state law "unless it impugns the fundamental fairness of the trial." Stockton v. Virginia, 852 F.2d 740, 748 (4th Cir. 1988) (citing Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960)). The Supreme Court of the United States has "defined the category of infractions that violate 'fundamental fairness' narrowly. Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." Estelle, 502 U.S. at 73 (quoting Dowling v. United States, 493 U.S. 342, 352 (1990)) (internal citations removed).[12] A state court error in interpreting state law does not give rise to a federal Due Process issue unless it is "so gross, conspicuously prejudicial, or otherwise of such magnitude that it fatally infects the trial."[13] McCafferty v. Leapley, 944 F.2d 445, 452 (8th Cir. 1991). None of the exceptional circumstances implicating Due Process apply in Jessup's case.

Further, on direct review, the Court of Appeals of Virginia determined that the trial court had not abused its discretion in denying the motion for new trial because the motion for new trial was based on an affidavit that the victim had failed to sign. Jessup v. Commonwealth, No. 2160-13-3, slip op. at 5. Moreover, at the motion hearing, the Commonwealth proffered that the investigator sent to contact the victim "would testify that the victim stated the sexual abuse did occur, she told the truth when she testified, and she had no idea of the consequences of being put

---

[12] In McGuire, the petitioner argued that the trial judge incorrectly interpreted the California Evidence Code. However, "the Due Process Clause does not permit federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." McGuire, 502 U.S. at 72 (quoting Marshall v. Lonberger, 459 U.S. 422, 438, n.6 (1983)).

[13] In Lisenba v. California, 314 U.S. 219 (1941), the Supreme Court of the United States held: "[D]enial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it . . . the acts complained of must be of such quality as necessarily prevents a fair trial." Id. at 236. The Court offered examples: "when a coerced confession is used as a means of obtaining a verdict of guilt," "extort[ing] testimony from a defendant by physical torture," "[a] trial dominated by mob violence," "fraud, collusion, trickery and subornation of perjury [by the state]," and "by threats or promises . . . a defendant was induced to testify against himself." Id. at 237.

16

under oath and testifying to something different, but once she learned the consequences, she would not sign the affidavit." Id. at 6. The prosecutor also proffered that the investigator would testify that: Jessup's wife offered the victim $2,000 to recant her testimony, Jessup asked his wife "has she gotten the money yet" during a recorded jail conversation, and the victim needed money because she had a young child and was on public assistance. Id. Lastly, the trial court listened "very closely" to the victim, finding her testimony "intelligent and credible" and the cross-examination of the victim "very intense." Id.

The court agrees with the Court of Appeals of Virginia. The trial court properly weighed the credibility impression of the victim at trial with proffers from counsel and concluded that an unsigned affidavit did not entitle Jessup to a new trial. See Powell, 112 S.E. at 661. Therefore, the trial court's denial of the motion for a new trial did not implicate the Due Process clause and, regardless, the Court of Appeals of Virginia's decision was not contrary to, or an unreasonable interpretation of, federal law, or an unreasonable determination of facts. The court will grant the motion to dismiss as to Claim 8.

## VI. Conclusion

For the reasons stated, the court will grant the motion to dismiss. The petition is without merit. An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to Jessup and to counsel of record for Respondent.

ENTER: This 14th day of June, 2018.

Senior United States District Judge

17